[Nos. 19468-0-III; 19584-8-III.   Division Three.   April 25, 2002.]

*In the Matter of the Marriage of* YOLANDA BLAKELY, *Respondent*, and RALPH HOWARD BLAKELY, JR., *Appellant*.

BLAKELY FARMS TRUST, ET AL., *Respondents*, v. YOLANDA BLAKELY, ET AL., *Respondents*, RALPH H. BLAKELY, JR., *Appellant*.

*John L. McKean*, for appellant.

*Gary J. Gainer* and *Dennis P. Hession* (of *Richter-Wimberley, P.S.*), *Eric R. Shumaker*, and *Melvin H. Champagne*, for respondents.

SCHULTHEIS, J. — The trial court has inherent power to appoint a guardian ad litem for a litigant in a civil matter upon a finding that the litigant is incompetent. RCW 4.08.060; *Tai Vinh Vo v. Le Ngoc Pham*, 81 Wn. App. 781, 784, 916 P.2d 462 (1996). Ralph H. Blakely Jr. was named as a third party defendant in a lawsuit challenging the validity of his family's trust agreement. At the time, he was party to a marital dissolution action and faced charges for the first degree kidnapping of his wife and child. Upon the motion of his marital dissolution counsel, the trial court appointed a guardian ad litem (GAL) to represent Mr. Blakely's interests in the civil actions. Months after settlement of the trust, a superior court jury found Mr. Blakely competent to stand trial on the criminal charges. He then challenged the appointment of the GAL and declared himself competent to represent his interests in the civil matters. The trial court denied his motion to dismiss the GAL.

On appeal, Mr. Blakely contends the trial court impermissibly granted the GAL the power of a general guardian without following the procedures of the guardianship statute, RCW 11.88.040. Additionally, he argues that he was denied his due process rights to contest the appointment of the GAL. As a result, he contends, the orders approving the settlement of the trust and dissolution are void or voidable. Because we find that the trial court's procedure in appointing the GAL complied with due process, we affirm.

## FACTS

Mr. Blakely's history of complex business maneuvers and litigation is extensive. The record indicates that he and his wife were involved in over 60 lawsuits from the date of their marriage in 1973 through 1995. In part to protect his assets, including at various times a dairy farm, an orchard,

and other property, Mr. Blakely transferred and exchanged property and assets under the management of the Blakely Farms Trust.

Beginning with his voluntary commitment in 1972 and running through the period of this litigation, Mr. Blakely has been diagnosed by various mental health experts as suffering from an ongoing serious mental illness. He reportedly experiences delusions and hallucinations and exhibits impaired memory. While some of these health professionals have diagnosed chronic paranoid schizophrenia, others have concluded that Mr. Blakely suffers from a severe personality disorder with components of schizotypal, narcissistic, and paranoid personality disorders.

In July 1995, Yolanda Blakely filed a petition for dissolution of the marriage. One year later, Stan Long, as trustee for the Blakely Farms Trust, filed a petition for a declaration of the validity of the trust and for an accounting. Ms. Blakely and their two adult daughters were named defendants. They in turn named Mr. Blakely, his father, his minor son, and other beneficiaries under the trust as third party defendants.[1]

Trial in the trust matter was set for mid-November 1998. Mr. Blakely elected to appear pro se. About three weeks before trial, however, Mr. Blakely was arrested for kidnapping his wife and son and transporting them across the state line. The federal kidnapping charges were eventually dismissed and he was charged in Grant County with two counts of first degree kidnapping.

On the first day of the trust trial, November 16, 1998, Mr. Blakely was still incarcerated. His two criminal defense lawyers appeared for the limited purpose of moving to stay or continue the trust and dissolution proceedings or to appoint a GAL. Citing concern that Mr. Blakely's mental problems would put his Fifth Amendment rights in jeopardy, defense counsel stated, "I don't believe it's prudent or

---

[1] Three of the beneficiaries included in the trust document were later determined to be fictitious.

fair to put a man in the stands to talk about the facts in this case if he's suffering those disabilities." Report of Proceedings (Nov. 16, 1998) at 22. The trial court, assured by the parties to the trust action that Mr. Blakely would not be called as a witness, denied the motion to stay and the motion to appoint a GAL. The court offered to seek Mr. Blakely's attendance at trial by coordinating with the federal court, as long as Mr. Blakely filed a request to participate.

Trial continued in the trust matter. After a few days, the criminal defense counsel moved for a mistrial. Noting that Mr. Blakely never requested transport or any other form of participation, the trial court denied the motion but arranged for Mr. Blakely to receive a transcript of the proceedings to this point. The trust proceedings were stayed to allow Mr. Blakely a week to read the transcript after he received it. The court also offered to check whether Mr. Blakely could be physically present during the trust proceedings. Ultimately however, Mr. Blakely never formally requested his presence at the trust trial.

In February 1999, Mr. Blakely's counsel in the dissolution action, Matthew Dudley, appeared at the trust proceedings for the limited purpose of seeking appointment of a GAL for Mr. Blakely. Mr. Dudley claimed that his client was unable to communicate with him and was not competent to represent himself. Because the trust and dissolution actions were complex, Mr. Dudley requested appointment of Larry Weiser as Mr. Blakely's GAL pursuant to RCW 4.08.060. Ms. Blakely and her daughters objected to the order for appointment of a GAL as untimely and unsupported by the evidence. Mr. Long, trustee of the Blakely Farms Trust, supported appointment of a GAL. After reviewing medical and psychological records, the trial court granted the motion in March 1999 and appointed Mr. Weiser as GAL. The court ordered Mr. Weiser to review the record and to determine the recommended extent of his and Mr. Blakely's participation in the trust trial.

Mr. Weiser's confidential GAL report was issued in April 1999. Based on medical records from 1973 to 1999 and interviews with Mr. Blakely and two of his attorneys, Mr. Weiser concluded that Mr. Blakely had difficulty assisting his attorneys and was not competent to understand the significance of the civil legal proceedings or their effect on his best interests. After reviewing the trust litigation to this point, Mr. Weiser felt that Mr. Blakely's interests had been considered to some degree, obviating the need to declare a mistrial. He recommended that a GAL be given authority to represent Mr. Blakely in the remaining trust litigation, and to settle with mediation if possible. On April 30, 1999, the trial court authorized Mr. Weiser to represent Mr. Blakely and to participate in settlement negotiations of all the remaining trust claims.

The parties reached a settlement agreement of the trust litigation in November 1999. When he presented the agreement at a pretrial hearing on November 12, Mr. Weiser noted that Mr. Blakely's condition had deteriorated and that he was unable to make decisions for himself in these matters.

On April 13, 2000, a jury decided that Mr. Blakely was competent to stand trial on the criminal charges. A month later, Mr. Blakely's new attorney, Steve Gustafson, moved to stay the dissolution proceedings until a hearing could be conducted to determine Mr. Blakely's competency and to remove the GAL. An attached affidavit by Mr. Blakely stated that he did not feel incapacitated and that the GAL had settled his trust and dissolution suits against his wishes. The trial court considered the motion, decided that a hearing was not feasible, and called for documentary evidence from the parties. Mr. Blakely submitted a confidential report from medical experts who diagnosed a severe personality disorder that nonetheless did not significantly interfere with Mr. Blakely's thought processes. According to the report, Mr. Blakely's history indicates that he selectively presents his mental condition in legal situations to meet his needs. The trial court considered the report of Mr.

Blakely's experts, reviewed the file, and denied the motion. The order denying the motion incorporated additional findings of fact and conclusions of law contained in a July 2000 letter to the parties.

In the decree of dissolution, filed on August 1, 2000, Mr. Blakely received one-half of the marital property and the proceeds from the trust as settled. All trust and dissolution matters thus decided, the cases were dismissed on August 3, 2000. Mr. Blakely appeals the order appointing the GAL and all actions and orders thereafter. The appeals of the dissolution order and of the trust settlement were consolidated for review.

## DUE PROCESS AND APPOINTMENT OF THE GAL

At issue here is the applicability of two guardianship statutes: chapter 11.88 RCW and RCW 4.08.060. The general guardianship statute, chapter 11.88 RCW, sets forth procedural rules for establishing guardianships and limited guardianships for incapacitated persons. By delineating specific requirements for these guardianship petitions and hearings, the legislature seeks to guarantee that the liberty and autonomy of incapacitated persons "should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs." RCW 11.88.005. Any person may petition in good faith for appointment of a guardian or limited guardian for an alleged incapacitated person. RCW 11.88.030(1). The alleged incapacitated person is then entitled to notice, a hearing, representation by counsel, and participation at the hearing. RCW 11.88.040, .045. Generally, upon receipt of the petition for appointment of a guardian or limited guardian, the trial court will appoint a GAL to represent the best interests of the alleged incapacitated person. Former RCW 11.88.090(2) (1996). A GAL appointed under RCW 11.88.090 has specific duties under the statute, including the duty (1) to meet and consult with the alleged

incapacitated person; (2) to meet with the person who seeks appointment as guardian or limited guardian; (3) to investigate alternate arrangements; and (4) to draft a report describing the degree of incapacity, the needs of the incapacitated person, and a recommendation as to whether a guardian or limited guardian is needed. Former RCW 11.88.090(4) (1996).

In the case before us, however, Mr. Blakely's dissolution attorney appeared specially at the trust proceedings to request appointment of a GAL pursuant to RCW 4.08.060. Unlike the GAL appointed under chapter 11.88 RCW to represent an alleged incapacitated person during guardianship proceedings, the GAL appointed under RCW 4.08.060 is appointed whenever an incapacitated person is a party to litigation in superior court. RCW 4.08.060. The statute sets out no procedure for appointment of the GAL beyond application requirements. RCW 4.08.060(1), (2). However, case law provides that whenever the issue of a party's competence to understand the legal proceedings is raised, the trial court should conduct a hearing to determine whether the party is mentally competent or requires a GAL. *Tai Vinh Vo*, 81 Wn. App. at 786. This hearing must allow the alleged incapacitated person the opportunity to present evidence on the question of mental capacity. *Id.* If the alleged incapacitated person or his or her attorney resists appointment of a GAL, the court must hold a hearing with an opportunity for the alleged incapacitated person to be heard. *Graham v. Graham*, 40 Wn.2d 64, 68, 240 P.2d 564 (1952).

As noted in *Graham*, 40 Wn.2d at 66-67, a court properly appoints a GAL for a litigant party when the court is reasonably convinced that the litigant is not competent to understand the significance of legal proceedings and the effect of such proceedings on the litigant's best interests. The court's determination of the need for a GAL under RCW 4.08.060 is reviewed for abuse of discretion. *Tai Vinh Vo*, 81 Wn. App. at 784.

In this case, Mr. Blakely's criminal defense attorneys and marital dissolution attorney sought appointment of a GAL. None of these attorneys stated that Mr. Blakely specifically requested a GAL to represent his interests. However, the criminal defense attorneys declared that they had been employed for the limited purpose of appearing for Mr. Blakely and seeking a continuance, a stay, or appointment of a GAL. Mr. Dudley, the dissolution counsel, requested appointment of a GAL because he was convinced that Mr. Blakely could not adequately act in his own interest, citing RPC 1.13(b). Mr. Blakely received notice that the trial court was considering whether to appoint a GAL. In January 1999, the court ordered the criminal defense attorneys to provide Mr. Blakely various documents, including the order granting him time to review the transcript of the trust proceedings and to present evidence relating to his mental competence. Mr. Blakely did not respond. Nothing in the record indicates that he resisted appointment of the GAL or that he objected after the GAL was appointed, at least not until after the settlement had been negotiated.

■ Based on the record before it at the time, the trial court did not abuse its discretion in determining that Mr. Blakely was incapacitated. Even those medical experts who did not diagnose Mr. Blakely as a chronic paranoid schizophrenic described him as seriously mentally ill and possibly suffering from organic brain syndrome. His poor memory, difficulty with abstract concepts, and delusional thought processes were documented by psychological tests and interviews. The fact that a jury found him competent to stand trial on criminal charges a year after the GAL was appointed and four months after settlement of the trust and dissolution proceedings is not relevant to the issue of Mr. Blakely's competence at the time of the trust and dissolution litigation. After reviewing the entire trust and dissolution files, the trial court remained satisfied that Mr. Blakely needed a GAL throughout the negotiation and settlement of the issues in those matters, especially considering the complexity of the undertaking.

■ ■ Mr. Blakely's contention that the trial court was required by due process and chapter 11.88 RCW to hold a hearing with his actual participation before appointing the GAL is without merit. As noted above, Mr. Dudley requested appointment of a GAL pursuant to RCW 4.08.060 for the limited purpose of protecting Mr. Blakely's interests in the trust and dissolution litigation. Under RCW 4.08-.060, the alleged incompetent is guaranteed the opportunity to present evidence on the question of mental competency, but is granted the opportunity to defend and be heard only if he or she resists appointment of a GAL. *Graham*, 40 Wn.2d at 68-69; *Tai Vinh Vo*, 81 Wn. App. at 786; *In re Welfare of Houts*, 7 Wn. App. 476, 481-82, 499 P.2d 1276 (1972).

Mr. Blakely had notice that the trial court was considering the issue of his competence. The trial court took evidence from all interested parties, including from the attorneys Mr. Blakely had engaged for the limited purpose of representing his interests in the trust proceedings. Because neither he nor the attorneys engaged by him objected to the appointment, the court was not compelled to hold a hearing with his participation to determine his capacity. *Graham*, 40 Wn.2d at 68. Further, he acquiesced by silence with the appointment procedure and ignored the trial court's repeated offers to help him participate in the trust proceedings. Under the doctrine of invited error, he cannot complain about an alleged error at trial that he set up himself. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995).

Affirmed.

KATO, A.C.J., and KURTZ, J., concur.

Review denied at 148 Wn.2d 1003 (2003).